NOT DESIGNATED FOR PUBLICATION

No. 124,003

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

JENNIFER SOEBBING,
*Appellee*,

and

MICHAEL LESSER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARY E. MATTIVI, judge. Opinion filed April 8, 2022.
Affirmed.

*Bryan W. Smith*, of Smith Law Firm, of Topeka, for appellant.

*Alan F. Alderson* and *Jennifer Martin Smith*, of Alderson, Alderson, Conklin, Crow & Slinkard,
L.L.C., of Topeka, for appellee.

Before HILL, P.J., POWELL and CLINE, JJ.

PER CURIAM: This appeal raises a unique issue. Can a father be held responsible
for his adult daughter's $1,400 per month rent as an educational expense because of the
terms of the separation agreement he made with his wife before their divorce 20 years
earlier? He can and he is. Our review of the district court's ruling and the agreement of
the parties requires us to affirm the court's ruling.

1

*Two parents separate, divorce, and agree on the custody of their children.*

Jennifer Soebbing and Michael Lesser divorced 20 years ago. At the time, they lived in Topeka, Kansas. They have two children who are now adults. Soebbing and Lesser signed a separation and property settlement agreement incorporated into the divorce decree. They agreed to joint legal custody of their minor children. In the section granting joint legal custody, they agreed to consult with each other with respect to major decisions affecting the children's education, religious training, health, and welfare.

Their agreement provided that they would split equally their children's: health insurance expenses when the children were between 18 and 24 years old; wedding costs if they ever married; school expenses through high school; and, as relevant here, post-high school education expenses until the children reached the age of 24. They defined post-high school education expenses to include room and board. We quote that provision:

> "1.　　The parties agree that the post-high school education expenses of the children shall be divided and paid for by the parties as follows:
>
> a.　　Husband shall forthwith establish a financial account for the benefit of each child and shall contribute $25.00 per month to each account commencing thirty (30) days from the date of this Agreement and each month thereafter until each child shall graduate from high school. Husband shall furnish Wife the financial institution statement of each account annually which verifies the payments made by him and the balance remaining in each account.
>
> b.　　Upon graduation from high school, the child shall be entitled to use the financial account balance to defray in part any post-high school education expenses until the child attains the age of Twenty-four (24) years. Should any balance remain at the time the child attains the age of 24 years, it shall be paid directly to the child.
>
> c.　　*Any expenses of the children for post-high school education expenses* not funded in full by the savings accounts as set forth above, or not funded by a scholarship, *shall be paid for by the parties equally or 50% by Wife and 50% by Husband until the child attains the age of twenty-four (24) years.*

d.    *Post-high school education expenses include, without limitation, tuition, books, fees, and room and board.*" (Emphases added.)

In 2007, Soebbing wanted to move the children to Wichita. The parties agreed to amend the agreement so that Soebbing would be solely responsible for the children's tuition. The other provisions of the agreement were unchanged.

*The parties return to court when they could not agree on some expenses.*

In 2016, their daughter, Ashley, enrolled at the University of Oklahoma. Soebbing requested Lesser pay half the expenses, but Lesser refused. The dispute was resolved in court. The Shawnee County District Court ruled the agreement was unambiguous. The court ruled that Soebbing was solely responsible for the tuition, but that Lesser had to pay half of the other educational expenses including ACT prep and test fees. The court was not persuaded by Lesser's argument that he was not responsible because he was estranged from Ashley and that he was not consulted on her educational decisions.

In 2019, the parties returned to court when Lesser refused to pay for half of Ashley's MCAT fees and room and board when she eventually enrolled in graduate school. Lesser argued the parties only contemplated paying for undergraduate education and that Soebbing had failed to consult him about Ashley's living arrangements or plans for graduate school.

The court again ruled the agreement was unambiguous. The court ruled there was no language in the agreement limiting education expenses to undergraduate school. The court also ruled the parties did not have to consult on Ashley's graduate school decisions. The court explained that although the agreement contained language requiring the parties to consult regarding major decisions related to the education of the children, that language was found in the "Joint Custody and Legal Residency" section of the agreement

3

and should be read in that context. The children were very young when the agreement was executed, and the parties had to consult on major decisions about the children because they were granted joint legal custody. But the children were now adults. The court ruled: "The parties are not required to consult regarding their adult children's life decisions. The Court believes such consultation and dialogue could help prevent future disagreements or misunderstandings, but a failure to do so does not negate the parties' financial responsibilities as outlined in the Settlement Agreement." Thus, the court ruled Lesser was responsible for his share of "education related expenses incurred by both children until they reach the age of 24. These expenses include the MCAT fees, preparatory materials, room and board, books, and other fees associated with the children's educational pursuits." Lesser did not appeal that order. The court denied Lesser's motion to alter or amend the order on March 19, 2020.

In October 2020, Soebbing filed the motion to enforce the agreement which is the subject of this appeal. She alleged Lesser was ignoring the court's order that he pay for Ashley's education expenses, including room and board. She asked for an order that Lesser pay all sums owed and for attorney fees. Lesser argued the room and board expenses incurred were not related to Ashley's education and that Soebbing was not acting in good faith because she had not consulted him about the expenses before they were incurred.

*We review some of the evidence presented to the court.*

The parties submitted copies of text messages and other correspondence in support of their arguments. On July 8, 2020, Ashley sent a text message to Lesser that read:

> "Hi I have been finalizing my plans but with the COVID-19 pandemic it has delayed and altered numerous things. I am taking a gap year because I don't feel that trying to do medical school online during a pandemic is the best choice for me. Instead I will be

4

continuing my education by taking classes to get my EMT license as well as graduate school classes to pursue my masters. I have an opportunity to gain research experience by working under one of the worlds top leaders in cancer research at UT Southwestern in Dallas. I will be moving in August to Dallas. This experience will greatly enhance my resume for medical school and I will be applying for the 2021 cycle once classes resume in person and the pandemic has lessened. I will send you the information regarding my living arrangements and expenses as I have located an apartment in Dallas. My hope is that this will all put me in the best possible position to be successful in a medical program."

Lesser responded:

"I think that is probably a good idea, and sounds like a great opportunity! You will love Dallas; hopefully the COVID cases will slow down before you move there. . . . Who is the doctor you will be doing research for? Is that where your thinking of Med School too?"

On August 5, 2020, Ashley sent a text message to Lesser revealing she had found an apartment close to UT Southwestern that would allow her "to be in the lab quickly and in a safe location with plenty of security measures." The rent was $1,470 a month plus utilities. Lesser suggested that was too expensive and asked her follow-up questions. Ashley responded that she had searched for the most economical and safest option close to the lab, but that Dallas rent "is what it is unfortunately." She also explained in text messages that she

- was still finalizing her classes;
- would be taking classes to get her EMT license;
- would be taking upper division classes from OU to set her up for medical school;
- would plan her course schedule once she finished her research hours;
- was applying to medical school;

5

- would be getting a small stipend for research; and
- COVID was impacting her plans.

Ashley's lease agreement for her apartment in Dallas was dated August 12, 2020.

Soebbing and Lesser communicated further through their attorneys. Lesser wanted to know what classes Ashley was taking and from where. Soebbing's attorney responded that Ashley was enrolled in an online graduate level medical ethics class (or classes) through OU that would "look good on her medical school resume" and that her research position at UT Southwestern was a "rare opportunity" to gain experience and set her apart from other applicants while she applied to medical school for the 2021 cycle.

Lesser submitted a screenshot of Ashley's LinkedIn profile to the court, which showed she was a research technician at the Children's Research Institute at UT Southwestern Medical Center and that she was a recent graduate with a degree in biology.

*The district court holds Lesser responsible for the expenses.*

In February 2021, the district court ruled that Ashley was participating in post-high school education classes and therefore Lesser was responsible for her room and board:

> "The parties expressly included a provision delineating what is included as
> 'expenses' and modified them by including the phrase 'without limitation.' The evidence
> before the Court shows that Ashley is living in Dallas while working or interning at UT
> Southwestern. She is also continuing her education by taking classes to get her EMT
> license as well as pursuing graduate level classes, albeit remotely from an institution not
> located in Dallas. It is clear that Ashley is participating in post-high school educational
> classes. As a result, Michael is bound by the arguably generous language of the

Settlement Agreement—that is, while Ashley is under the age of 24 and enrolled in and taking classes, Michael is responsible for half of her relevant expenses, as delineated by the Settlement Agreement."

The court also ruled it had dealt with the consultation issue before and reiterated that Lesser could not escape his responsibility just because Soebbing did not consult him:

"As the parties are aware, their children are now adults, free to make their own choices. The parties' elected, through their Settlement Agreement, to provide specific support for their children through the age of 24, six years past the age of majority. The parties made this choice. Parents do not always like or respect their children's decisions, but this Court must exercise its authority to enforce the Settlement Agreement as written."

The court denied Soebbing's request for attorney fees.

On appeal, Lesser expresses his disappointment with the district court's ruling in clear terms. He contends Ashley's room and board expenses are unrelated to her education because she is not attending classes at UT Southwestern. Instead, she is only taking an online course which does "not necessitate a luxury apartment in Dallas." He goes on, "A simple online college course in Oklahoma does not require Lesser to share in room and board costs incurred by Ashley in Dallas." He argues the parties did not contemplate online college courses or rental expenses incurred for a job and not near a college. He argues an internship that would look good on a resume is unrelated to her education and therefore her room and board is not an education expense.

*The legal principles that guide us are well established.*

A separation agreement is subject to the normal rules of contract law, so when the issue on appeal involves its interpretation, review is de novo. *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 939, 381 P.3d 490 (2016). The primary rule for interpreting written

7

contracts is to determine the parties' intent. If the contract is clear, the parties' intent should be determined from the language of the contract without applying rules of construction. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

Our interpretation of this contract must be methodical. A written instrument will not be found to be ambiguous unless two or more meanings can reasonably be construed from the contract. A court will not strain to find an ambiguity where, in common sense, there is none. *Iron Mound v. Nueterra Healthcare Management*, 298 Kan. 412, 418, 420, 313 P.3d 808 (2013). Parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by the writing is inadmissible when a contract is complete, unambiguous, and free from uncertainty. *In re Estate of McLeish*, 49 Kan. App. 2d 246, 256, 307 P.3d 221 (2013).

*We turn to the words of this contract.*

Here, the relevant provision of the agreement unambiguously reads:

> "c.      Any expenses of the children for post-high school education expenses not funded in full by the savings accounts as set forth above, or not funded by a scholarship, shall be paid for by the parties equally or 50% by Wife and 50% by Husband until the child attains the age of twenty-four (24) years.
> "d.      Post-high school education expenses include, without limitation, tuition, books, fees, and room and board."

The term "room and board" is part of the definition of "post-high school education expenses." Thus, the room and board expenses at issue must be education expenses. The agreement cannot be read so broadly to require the parties to pay the adult children's room and board if they are not continuing their education. But the adult children need not be full-time students.

Lesser chiefly objects to Ashley's decision to take online classes from a college in a different city than where she lives. But the COVID-19 pandemic changed the way that students went to school in 2020. The pandemic required online learning. The fact that Ashley is taking online courses does not alter the fact that she is continuing her education. Nothing in the agreement restricts Ashley to in-person learning or that requires Ashley to live in the same city as her school. She must live somewhere while taking classes. The agreement does not require her to live on a college campus. She would have room and board expenses either way. Her living expenses relate to her education because she is taking graduate and EMT classes and pursuing medical school. She is living in Dallas because she had the opportunity for an internship there that would prepare her for medical school. The agreement does not require that Ashley be a full-time student, a condition that could have been added when the agreement was drafted. She can intern and take classes at the same time, as many students do.

The broad language used by the parties here is in sharp contrast with the specific language used by the parties in *In re Marriage of Brautman & Hardesty*, No. 107,732, 2013 WL 1457955 (Kan. App. 2013) (unpublished opinion). There, the parties did agree to many of the conditions that Lesser wants to be read into this agreement:

> "It is agreed that the Petitioner [Hardesty] and the Respondent [Brautman] will each pay one-third of the reasonable tuition, books, room, and board expenses of a 4 year undergraduate college education (4 consecutive years) and post graduate education (4 to 6 additional consecutive years) for each child, provided, however, that the minor child be enrolled as a full-time student and maintain a GPA of 2.5. Further, prior to selecting their college and/or post graduate education, each of the children shall discuss with their parents the child's future educational selections and projected costs and expenses.
>
> "Petitioner and Respondent further agree that the cost of undergraduate and graduate education shall be based upon the tuition, cost of attendance of a state university, such as Kansas State University or Kansas University, and both parties further agree that any monthly living expenses and spending money to be provided to the child shall first be discussed and agreed upon between Petitioner and Respondent.

9

"It is further anticipated that in the event that any of the children attend college, they will attempt to seek part-time and summer employment not conflicting with their studies and other education aids, including scholarships and loans, if available, to help defray the expense of their education." 2013 WL 1457955, at *1.

But here, there are no such conditions. The parties are bound by the broad language they used in making their agreement.

*Lesser also complains about Soebbing.*

Lesser contends Soebbing has not acted in good faith because she has failed to communicate with him about Ashley's options. He complains that he was not consulted before Ashley signed her lease, changed her education plans, or accepted the job in Dallas. He also contends the district court erred in concluding Soebbing had no duty to consult him before unilaterally incurring expenses because it gives Soebbing and Ashley unchecked discretion. In other words, they decide and he writes the checks.

It appears that Lesser wants to put Soebbing in the middle of his relationship with his adult daughter. But the parties' children are now adults and make their own decisions. Soebbing no longer has a duty to consult with Lesser to make their adult children's education decisions, as when they were minors. We find no provision in the agreement requiring the children to consult with their parents on their educational decisions, a condition that could have been included in the agreement when drafted. The district court's construction of the consultation language in the agreement was correct. Even if it was incorrect, this matter was previously settled in a final order that Lesser did not appeal.

And the undisputed facts show Ashley did communicate to Lesser (before she signed her lease) her decision to put a hold on medical school because of COVID-19, to

10

move to Dallas, to continue her education by taking EMT classes and graduate level classes, and to gain research experience that would enhance her resume for medical school when she applied in 2021. Lesser's response was, "I think that is probably a good idea, and sounds like a great opportunity!"

Considering the particular facts of this case, we find no error by the district court.

Affirmed.